EDMUND G. BROWN JR.
Attorney General of the State of California
DANE R. GILLETTE
Chief Assistant Attorney General
GERALD A. ENGLER
Senior Assistant Attorney General
PEGGY S. RUFFRA
Supervising Deputy Attorney General
ALLEN R. CROWN
Deputy Attorney General
State Bar No. 56818
  455 Golden Gate Avenue, Suite 11000
  San Francisco, CA 94102-7004
  Telephone: (415) 703-5847
  Fax: (415) 703-1234
  Email:  Allen.Crown@doj.ca.gov

Attorneys for Respondent

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **MARCUS JAMES HOOKS,** | C 07-3604 JSW (PR) |
| Petitioner, | |
| **v.** | |
| **WARDEN OF AVENAL STATE PRISON,** | |
| Respondent. | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ANSWER**

1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DANE R. GILLETTE
   Chief Assistant Attorney General
3  GERALD A. ENGLER
   Senior Assistant Attorney General
4  PEGGY S. RUFFRA
   Supervising Deputy Attorney General
5  ALLEN R. CROWN
   Deputy Attorney General
6  State Bar No. 56818
     455 Golden Gate Avenue, Suite 11000
7    San Francisco, CA 94102-7004
     Telephone: (415) 703-5847
8  Fax: (415) 703-1234
   E-mail:  Allen.Crown@doj.ca.gov
9
   Attorneys for Respondent
10

11              IN THE UNITED STATES DISTRICT COURT

12          FOR THE NORTHERN DISTRICT OF CALIFORNIA

13              SAN FRANCISCO DIVISION

14

15  **MARCUS JAMES HOOKS,**                          C 07-3604 JSW (PR)

16                                    Petitioner,    **MEMORANDUM OF POINTS
                                                     AND AUTHORITIES IN**
17          **v.**                                   **SUPPORT OF ANSWER**

18  **WARDEN OF AVENAL STATE PRISON,**

19                                    Respondent.

20

21              **INTRODUCTION**

22          California state prisoner Marcus James Hooks has filed a petition for writ of habeas corpus

23  in this Court raising the following federal constitutional claims:  one, the trial court denied petitioner

24  his right to present a defense by excluding evidence of insurance industry practices; two, the court's

25  failure to provide accurate instructions on the elements of the crime violated petitioner's rights under

26  the Fifth, Sixth, and Fourteenth Amendments; three, trial counsel was ineffective under the Sixth

27  Amendment; and four, cumulative error.

28  ///

1

**STATEMENT OF THE CASE**

2          On April 22, 2005, the District Attorney filed an amended information in Santa Clara

3   County Superior Court accusing petitioner, Marcus James Hooks, as follows: count one, concealing

4   an event affecting the right to an insurance benefit in violation of California Penal Code §

5   550(b)(3);[1/] count two, presenting a fraudulent insurance claim in violation of § 550(a)(1); and count

6   three, preparing a false insurance claim in violation of § 550(a)(5). It was further alleged that during

7   the commission of the above offenses petitioner was out of custody on bail on felony insurance

8   fraud, a violation of § 550(a)(1), within the meaning of § 12022.1. It was also alleged that petitioner

9   had been convicted of two prior felony convictions for which he had served prison terms within the

10  meaning of § 667.5(b). 1 CT 124-27.

11         On May 11, 2005, petitioner admitted the further allegation enhancements. 1 CT 164.

12         On May 18, 2005, a jury found petitioner not guilty of count one and guilty of counts two

13  and three. 1 CT 191-96.

14         On June 15, 2005, petitioner was sentenced to state prison for a term of five years

15  consecutive to a prior prison term of five years, for a total prison term of ten years, as follows: one

16  year consisting of one-third of the midterm for count two, plus two years under § 12022.1, plus two

17  years consisting of one year for each prior felony conviction enhancement under § 667.5(b). The

18  midterm sentence for count three was stayed under § 654. 1 CT 238-40, 243A-C.

19         On September 28, 2006, the California Court of Appeal, Sixth Appellate District, affirmed

20  the judgment. Exh. F.

21         On January 17, 2007, the California Supreme Court denied petitioner's petition for review.

22  Exh. H.

23         On June 21, 2007, petitioner filed a petition for writ of habeas corpus in the United States

24  District Court for the Eastern District of California.

25         On June 28, 2007, that Court ordered the petition transferred to this Court.

26         On November 20, 2007, this Court issued an order to show cause.

27  _____

28         1. Unspecified statutory references are to the California Penal Code.

**STATEMENT OF FACTS**[2]

**Prosecution Case**

On April 15, 2002, before 11 a.m., in San Jose, a Toyota Camry stopped for a pedestrian, petitioner stopped his Acura Integra behind the Camry, and a Suburban hit petitioner's car from behind and shoved it into the Camry. 1 RT 99-101. Petitioner's car had major rear-end damage and was towed from the scene. 1 RT 101, 104, 106. The responding officer cited the Suburban driver for driving too fast for conditions, but did not cite petitioner for driving without insurance even though petitioner did not have insurance. 1 RT 102-03, 105. Petitioner indicated that his back was hurting, but refused emergency medical assistance and indicated that he would see his own doctor. 1 RT 101-02.

On April 15, 2002, about 5:30 p.m., petitioner went to insurance agent John Anjomi's office where he purchased automobile insurance, liability insurance only in the minimum amount available, for his Acura Integra. 1 RT 183, 206, 211-12, 215, 222-23. Petitioner rejected uninsured motorist coverage, which is very inexpensive. 1 RT 182-83, 226-27. Petitioner told Anjomi that he worked at UTC in San Jose as a maintenance worker. 1 RT 218. Petitioner said that he did not have any accidents or convictions within the past three years. 1 RT 219, 235, 237-38. The policy was effective on April 15, 2002, at 5:47 p.m., the time that Anjomi submitted the information electronically to the insurance company. 1 RT 168, 178-79, 224-25. Petitioner and Anjomi signed the insurance application. Anjomi sent the original with a check for the $35.50 premium to the insurance company. Anjomi made copies for himself and petitioner, and printed a temporary identification card that he gave to petitioner. 1 RT 168-69, 178, 186, 224, 227-34. The insurance company sent petitioner a bill due June 2, 2002, that included additional premiums because petitioner's driving record had several violations and he did not qualify for a good driver discount. No further premiums were received, so the policy was canceled effective June 2, 2002. 1 RT 173-74, 180, 184-85.

On April 15, 2002, the Suburban driver who caused the accident reported it to her

---

2. The state Court of Appeal's summary of the facts is set forth at Exh. F, 2-5.

1    insurance company.  1 RT 101, 115.  Harold Morrison, the claims specialist for her insurance

2    company, determined that it was a clear case of liability.  1 RT 110-11.  He paid petitioner $1,696.89

3    for petitioner's claim for damage to his tools that were in the car without proof and $4,149.71 for

4    towing, storage, and the car, which was a total loss and was not repaired.  1 RT 112-13.  On April

5    19, 2002, when Morrison learned that petitioner would be making a bodily injury claim, he took

6    petitioner's statement that same day in a recorded telephone call to determine if there were any lost

7    wages or past claims.  1 RT 114-15.  In the recorded statement, petitioner indicated that just after

8    the accident, petitioner felt dizzy, but all right.  Then he started feeling pain in the lower lumbar and

9    upper cervical.  He went to a chiropractor who found bruising and swelling in the lower lumbar and

10   upper cervical.  1 RT 122-23.  Petitioner said that he was being sent home from work, he worked

11   at United Technology Chemical Systems as an unpaid intern, he did auto reconstruction out of his

12   house, he was a full-time student at Mission College, and he worked part time for an Emergency

13   Medical Response unit.  1 RT 118, 125-27.  Petitioner indicated that his car was towed to

14   Fairgrounds Auto Body.  1 RT 124.  He said that the tool box in the back of his car got smashed and

15   his spray gun got bent.  1 RT 128.  He denied having ever been in an automobile accident before,

16   denied ever having had a slip and fall accident, and admitted getting into an automobile accident the

17   year before.  1 RT 129.  After taking petitioner's recorded statement on April 19, 2002, at 11:07

18   a.m., Morrison phoned petitioner's attorney, Daniel Herns, who told Morrison that he was

19   representing petitioner for the bodily injury portion of his claim, but that Morrison could handle the

20   property damage aspects of the claim without going through Herns.  1 RT 130-32; 2 RT 272.

21          Herns sent petitioner a letter dated April 22, 2002, with a contract for representation to

22   sign and return, a copy of the contract to keep, and authorization forms for medical records and lost

23   wages.  2 RT 275-76, 284, 286.  Herns did not handle the property damage claim, which petitioner

24   handled himself.  2 RT 278.  Herns gave petitioner advice on damages, including pain and suffering,

25   as well as lost wages.  2 RT 281-84, 287-89.  To obtain lost wages recovery, he advised, the person

26   would have to be working and miss time from work.  2 RT 284-85.  If someone did not have

27   insurance then Herns would not take their case because there would be no recovery for pain and

28   suffering.  2 RT 292-93.  Herns got the police report that said that petitioner had no insurance, so

Memorandum of Points and Authorities in Support of Answer - *Hooks v. Warden*, C 07-3604 JSW (PR)

4

1    Herns knew that he discussed that issue with petitioner.  2 RT 298-99.

2         Morrison sent Herns a letter dated November 6, 2002, indicating his belief that petitioner

3    was uninsured at the time of the accident, asking if Herns was still representing petitioner, and

4    asking due to Proposition 213 for a copy of petitioner's liability policy in effect at the time of the

5    accident.  1 RT 132-34.  Morrison noticed that the police report indicated that petitioner had no

6    proof of insurance.  1 RT 135.  Since Proposition 213 became law, attorneys do not ordinarily

7    represent uninsured people for bodily injury claims because damages for pain and suffering cannot

8    be recovered, so the recovery is essentially limited to property damage, medical bills, and lost

9    wages. 1 RT 134-39. Herns discussed the insurance issue with petitioner after receiving Morrison's

10    November 6, 2002, letter.  2 RT 301-02.  Petitioner told Herns that he had purchased insurance on

11    the date of the accident and that he had insurance at the time of the accident.  2 RT 302-03, 310, 337.

12    Herns did not think to ask petitioner if he bought the insurance before or after the accident.  2 RT

13    304-08.  Petitioner said that he went to get insurance in the morning and then went back to pay for

14    it in the afternoon, which satisfied Herns.  2 RT 309.  Herns did not ask petitioner why he told the

15    police officer that he had no insurance if he had purchased it that morning.  2 RT 309-10.  Petitioner

16    said at some point that he was not sure if he was entitled to damages for pain and suffering.  Herns

17    explained to petitioner about Proposition 213.  2 RT 313-15.  After discussing it with petitioner,

18    Herns had no doubt that petitioner was insured at the time of the accident.  2 RT 312-13, 337.

19         Herns sent Morrison a letter dated December 30, 2002, stating that he would be submitting

20    a demand package.  1 RT 140.  Herns phoned Anjomi's  office and asked for a copy of the policy

21    that showed that petitioner had liability coverage on April 15, 2002.  1 RT 239-40; 2 RT 321.  On

22    December 31, 2002, Anjomi sent a fax to Herns containing Anjomi's entire file, including the

23    declarations page and the two-page application that showed the exact time coverage was effective.

24    1 RT 214, 240-44.  Herns denied receiving the two-page application, but did receive the declaration

25    page showing the policy period as "4-15-02 to 4-15-03" but did not show the time that coverage was

26    effective.  2 RT 326-29.  It never occurred to Herns that there was an issue about the exact time that

27    the policy became effective.  2 RT 328, 330.  Herns spoke to petitioner by phone several times on

28    December 31, 2002, and January 2, 2003, to go over the demand package, including the demand

1    letter, medical bills, wage loss verification form, and proof of insurance.  2 RT 330-36.

2          Morrison wrote Herns a letter dated January 3, 2003, pointing out that the police report

3    said that petitioner was uninsured at the time of the accident and requesting a certified copy of

4    petitioner's automobile liability policy with the demand package.  1 RT 140-41.  Herns testified that

5    Morrison's letter crossed in the mail with Herns' demand package.  2 RT 339.  On January 7, 2003,

6    Morrison received the demand package that included a demand letter dated January 3, 2003,

7    requesting a total settlement amount of $17,750, a medical report and bill for $5,035.32, a wage loss

8    verification form showing total wages unpaid of $3,360, a declarations page from an insurance

9    policy showing a coverage period of 4-15-02 to 4-15-03, a copy of a temporary identification card

10   for insurance coverage, and the recorded statement of petitioner talking to Morrison.  1 RT 142-45,

11   158.  The medical report showed that petitioner's first examination was on April 24, 2002, which

12   was nine days after the accident and five days after petitioner told Morrison what the chiropractor's

13   initial diagnosis was.  1 RT 148.  Morrison did not question the wage loss verification form from

14   Fair Grounds Collision Repair.  1 RT 149.

15         Morrison wrote Herns a letter dated January 22, 2003, offering to settle the claim for the

16   special damages totaling $8,395.32, meaning the medical bill and wage loss, but offering nothing

17   for the general damages for pain and suffering that was included in the demand letter, and indicating

18   that it was not intended to generate a counter-offer.  1 RT 149-51.  On January 23, 2003, Herns

19   phoned Morrison to get an explanation for the rejection of the claim for pain and suffering and asked

20   to speak to Herns' boss.  Morrison told Herns that his boss agreed.  1 RT 152; 2 RT 340-41.  Herns

21   also called Anjomi to discuss the settlement offer, and Anjomi told Herns that the policy was

22   effective about 5 p.m.  1 RT 245-46; 2 RT 341-43.  Herns phoned petitioner and told him that

23   Anjomi just said what time the policy was taken out.  Petitioner said, "Yeah, that's right."  2 RT 344.

24   Herns told petitioner that he was lucky to be getting payment for his medical bills and lost wages

25   and that he would take the offer.  Petitioner agreed.  2 RT 345.  The offer of $8,395.32 was accepted

26   and paid.  1 RT 152; 2 RT 346.  Herns paid the medical bill, took costs and fees for himself, and

27   disbursed $528.71 to petitioner.  2 RT 360.

28         John Sanchez testified that he owned and actively managed Fairgrounds Collision Center

Memorandum of Points and Authorities in Support of Answer - *Hooks v. Warden*, C 07-3604 JSW (PR)

1   from 1999 to 2004.  His brother, Christopher Sanchez, worked for him doing estimates, sales, some

2   painting, and filling in for him when he was not there.  John Sanchez handled the hiring and firing

3   and employee matters; Christopher Sanchez did not do those things.  2 RT 391, 393-97, 418-20.

4   Petitioner was allowed to work on his own cars out back and once painted a car in an emergency,

5   but petitioner was never an employee and was never paid for working there.  2 RT 393, 420-24.

6   Neither John nor Christopher Sanchez had ever seen the wage loss verification form that said that

7   petitioner worked for Fair Grounds Collision Center for eight months at $21 per hour and missed

8   20 days of work and lost wages of $3,365.  2 RT 398-99, 420-21.  Christopher Sanchez agreed that

9   the form said Chris Sanchez, but denied that he signed it, wrote on it, or ever talked to petitioner

10  about such a form.  2 RT 399-402.  He also pointed out that the form said "Fair Grounds" in two

11  words, but he would not have written it that way because "Fairgrounds" was one word.  2 RT 417.

12          **Defense Case**

13          John Anjomi testified that many customers lie about their driving records on their

14  insurance applications.  2 RT 428-29.  Most of Anjomi's customers buy the minium insurance.  2

15  RT 431.

16          A document examiner gave an expert opinion that she was unable to determine if

17  petitioner's signature and initials were on Anjomi's insurance documents, 3 RT 475-77, 482-89,

18  491-501, 503, except for one signature that she believed was petitioner's.  3 RT 502.  She could not

19  say that petitioner did not sign and initial the documents.  3 RT 526-30.

20          An investigator for the District Attorney's Office testified that, when she spoke to

21  Christopher Sanchez, he told her that he did not remember signing the wage loss verification form,

22  but he was not sure if the signature and other writing on it were his.  2 RT 450-54, 456-58.  But John

23  Sanchez told her that he had never seen the form and that the signature did not look like

24  Christopher's.  2 RT 454.  Christopher Sanchez told her that he thought that petitioner was an

25  employee of Fairgrounds Collision Center, but that John Sanchez was the person who would know

26  if petitioner was an employee.  2 RT 454-56.  When the investigator interviewed Herns, he said that

27  the first time he learned of the possibility that petitioner was not insured at the time of the accident

28  was after receiving Morrison's November 6, 2002, letter.  2 RT 459.

**STANDARD OF REVIEW**

A federal court may grant a writ of habeas corpus to a state prisoner only if the state court's rulings "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or were "based on an unreasonable determination of the facts in light of the evidence presented" in the state courts. 28 U.S.C. § 2254(d). Under the "contrary to" clause, a state court decision is contrary to federal law if it "contradicts the governing law set forth in our cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *see also Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam). That test does "not require citation of our cases – indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early,* at 8.

The ultimate controlling authority is the holding of the Supreme Court's cases at the time of the relevant state-court decision, not the dicta. *Williams v. Taylor*, 529 U.S. at 412. The state courts are presumed to "know and follow the law," and the standard for evaluating state-court rulings, which are given the "benefit of the doubt," is "highly deferential." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam). "A federal court may not overrule a state court for simply holding a view different from its own, when the precedent from this Court is, at best, ambiguous." *Mitchell v. Esparza,* 540 U.S. 12, 17 (2003). In other words, "[i]f no Supreme Court precedent creates clearly established federal law relating to the legal issue the habeas petitioner raised in state court, the state court's decision cannot be contrary to or an unreasonable application of clearly established federal law." *Brewer v. Hall*, 378 F.3d 952, 955 (9th Cir. 2004).

In order to warrant habeas relief, the state court's application of clearly established federal law must be not merely erroneous, incorrect, or even "clear error," but "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 76 (2003); *see also Williams v. Taylor*, 529 U.S. at 409; *Woodford v. Visciotti*, 537 U.S. at 24. It is the habeas petitioner's burden to make that showing. *Woodford*, at 25. In the same way, a "decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of

the evidence presented in the state-court proceeding." *Miller-El v. Cockrell,* 357 U.S. 322, 340 (2003). State court factual determinations are presumed correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Harmless error review is no less exacting. An error can justify overturning the conviction only if it had a "'substantial and injurious effect or influence in determining the jury's verdict.'" *Penry v. Johnson*, 532 U.S. 782, 795 (2001), *quoting Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). The *Brecht* standard applies to all § 2254 cases, regardless of the type of harmless error review conducted by the state courts. *Fry v. Pliler*, ___ U.S. ___, 127 S.Ct. 2321, 2328 (2007).

When there is no reasoned opinion from the highest state court to consider petitioner's claims, the federal court looks to the last reasoned state court opinion. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079, n. 2 (9th Cir. 2000).

Petitioner's claims, as identified below, fail as a matter of law under the AEDPA standards. The petition should accordingly be denied.

**CLAIM ONE**

**PETITIONER'S CLAIM THAT THE TRIAL COURT DENIED HIS RIGHT TO PRESENT A DEFENSE BY EXCLUDING EVIDENCE OF INSURANCE INDUSTRY PRACTICES IS WITHOUT MERIT**

In claim one, petitioner contends that the exclusion of expert witness testimony on insurance industry practices denied his constitutional right to present a defense. Pet., 13-27. This claim is without merit because petitioner has failed to show that the state appellate court made an objectively unreasonable application of clearly established United States Supreme Court precedent or that the state appellate court decision was based upon an unreasonable determination of facts.

A criminal defendant is entitled to call witnesses and to present a defense to the charges against him. *See Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (the state must give a defendant the opportunity to present a defense by attacking his confession); *Washington v. Texas*, 388 U.S. 14, 19 (1967) (the state must allow a defendant to present witnesses to the alleged crime). However, "the Constitution permits judges to exclude evidence that is repetitive, only marginally relevant or poses an undue risk of harassment, prejudice, or confusion of the issues." *Holmes v. South Carolina*, 126 S.Ct. 1727, 1732 (2006). In *Chambers v. Mississippi*, 410 U.S. 284 (1973), the Supreme Court held

that due process "is, in essence, the right to a fair opportunity to defend against the State's accusations." *Id.* at 294. There, the excluded evidence consisted of the hearsay testimony of three witnesses who had heard another man confess to the charged crime. *Id.* at 303. The Supreme Court found a due process violation because the evidence had "persuasive assurances of trustworthiness" and was "critical" to the defense. *Id.* at 302. Here, petitioner was not denied the opportunity to call critical witnesses, nor denied the opportunity to present a defense. As the Court of Appeal correctly found, the trial court's exclusion of the proffered expert testimony was not error under state law because the evidence was not relevant to the charges against petitioner and was largely cumulative of other evidence, the application of the ordinary rules of evidence do not implicate the federal constitutional right to present a defense, the federal constitutional error claim was not preserved for appeal,[3/] and prejudice from any error did not result because there was "no possibility of an unfair trial" under the circumstances of this case. Exh. F, 7-12. The denial of an opportunity to present evidence of such marginal relevance as is involved here did not violate petitioner's federal constitutional rights, and petitioner has failed to show otherwise. This Court should reject his claim and deny the petition.

But even if there were error, it would not have had a substantial and injurious effect on the jury's determination. Expert witness testimony regarding insurance industry practices would not have shown that petitioner did not knowingly cause a false insurance claim to be prepared and submitted by purchasing insurance after the accident that was the subject of his claim. Given the state of the evidence, the jury was not likely to return a verdict more favorable to petitioner even if expert witness testimony had been admitted into evidence in addition to the testimony of the attorney who prepared his claim regarding insurance industry practices. Under the *Brecht* standard, any error in the exclusion of the evidence was harmless because it did not have a substantial influence in determining petitioner's guilt. The jury's decision would have been the same.

///

---

3. Accordingly, this claim is also procedurally defaulted. *Coleman v. Thompson,* 501 U.S. 722, 729 (1991); *Davis v. Woodford*, 384 F.3d 628, 654 (9th Cir. 2004) (constitutional claim was procedurally defaulted where only evidentiary objection was raised at trial).

1

### CLAIM TWO

2

3

**PETITIONER'S CLAIM THAT THE TRIAL COURT VIOLATED HIS
RIGHTS BY FAILING TO PROVIDE ACCURATE INSTRUCTION ON
THE ELEMENTS OF THE CRIME IS WITHOUT MERIT**

4    In claim two, petitioner contends that the trial court failed to adequately instruct on

5  mistake of law to negate the specific intent to commit fraud.  Pet., 27-36.  This claim is without

6  merit because petitioner has failed to show that the state appellate court made an objectively

7  unreasonable application of clearly established United States Supreme Court precedent or that the

8  state appellate court decision was based upon an unreasonable determination of facts.

9    A criminal defendant has the right to a jury trial and the right to proof beyond a reasonable

10  doubt of every element of the charged crime(s).  It necessarily follows that the elements of the

11  crime(s) charged must be submitted to the jury.  *See United States v. Gaudin*, 515 U.S. 506, 509-11,

12  522-23 (1995); *Sullivan v. Louisiana*, 508 U.S. 275, 277-78 (1993).  Here petitioner claims that his

13  federal constitutional right to have the jury decide every element of the charged crime(s) was denied

14  because the trial court failed to instruct sua sponte on the mistake of law to negate the specific intent

15  to commit fraud.  The Court of Appeal rejected this claim.  Exh. F, 12-16.  The Court of Appeal

16  found that there was no evidence that petitioner "believed his conduct was lawful or that such a

17  belief was held in good faith."  Exh. F, 16.  In the absence of any evidence to support giving the

18  instruction, the Court of Appeal found that it was not error to fail to so instruct.  Petitioner does not

19  cite United States Supreme Court precedent to the contrary.

20    The state appellate court correctly applied federal constitutional standards in denying

21  petitioner's claim that the trial court should have instructed sua sponte on mistake of law to negate

22  the element of specific intent to defraud.  The state court's determination that there was insufficient

23  evidence to warrant an instruction is presumed correct under 28 U.S.C. § 2254(e)(1), and "should

24  be the final word on the subject."  *Menendez v. Terhune*, 422 F.3d 1012, 1029 (9th Cir. 2005).

25  Petitioner has failed to demonstrate that the state appellate court decision was contrary to clearly

26  established federal law or that the state appellate court decision was based upon an unreasonable

27  determination of facts.

28    But even if there were such error, it would not have had a substantial and injurious effect

Memorandum of Points and Authorities in Support of Answer - *Hooks v. Warden*, C 07-3604 JSW (PR)

1  on the jury's determination.  Petitioner purchased insurance after having a traffic accident and then

2  caused an insurance claim to be prepared and submitted in which he maintained that he was insured

3  at the time of the accident.  Given that evidence, there was no mistake of law, and the jury was not

4  likely to return a verdict more favorable to petitioner even if an instruction on mistake of law had

5  been given.  Under the *Brecht* standard, any error in failing to give sua sponte instruction on mistake

6  of law was harmless because it did not have a substantial influence in determining petitioner's guilt.

7  The jury's decision would have been the same.

8  ## CLAIM THREE

9  ### PETITIONER'S CLAIM OF DENIAL OF EFFECTIVE ASSISTANCE OF COUNSEL IS WITHOUT MERIT

10

11  In claim three, petitioner contends that he was denied effective assistance of counsel

12  because defense counsel failed to argue that the expert witness's testimony regarding insurance

13  industry practices was necessary for him to present a defense under the federal Constitution and

14  because defense counsel failed to request an instruction on mistake of law to negate the specific

15  intent to defraud.  Pet., 36-38.  This claim is without merit because petitioner has failed to show that

16  the state appellate court made an objectively unreasonable application of clearly established United

17  States Supreme Court precedent or that the state appellate court decision was based upon an

18  unreasonable determination of facts.

19  The United States Supreme Court's decision in *Strickland v. Washington*, 466 U.S. 668

20  (1984), set forth the standards for establishing ineffective assistance of counsel.  Petitioner must first

21  show deficient performance by counsel.  This requires a showing counsel made errors so serious that

22  counsel was not functioning as the "counsel" guaranteed to a defendant by the Sixth Amendment.

23  *Id.*, 687.  Second, petitioner must show the deficient performance prejudiced the defense.  This

24  requires showing counsel's errors were so serious as to deprive petitioner of a fair trial.  *Id.*  With

25  respect to attorney competency, judicial scrutiny of counsel's performance must be highly

26  deferential.  Every effort must be made to "eliminate the distorting effects of hindsight" and to

27  evaluate the conduct from counsel's perspective at the time.  *Id.*, 689.  A reviewing court must

28  indulge a strong presumption that counsel's conduct falls within the wide range of reasonably

1  professional assistance. *Id.* Under 28 U.S.C. § 2254(d), the question is whether the state court's

2  denial of relief was reasonable; thus, the standard on habeas review is "doubly deferential." *See*

3  *Yarborough v. Gentry*, 540 U.S. 1, 6 (2003) (per curiam).

4        The state appellate court denied petitioner's claim of ineffective assistance of counsel after

5  reasonably concluding that there was no error from the exclusion of the proffered expert witness

6  testimony regarding insurance industry practices, as discussed above regarding claim one, and that

7  there was no error in the jury instructions, as discussed above regarding claim two. Exh. F, 16-17.

8  Therefore, even if defense counsel had raised either of the issues, it would not have been successful.

9        Petitioner has failed to show that defense counsel's conduct was outside the range of

10  acceptable representation and that, had he done as petitioner contends he should, the jury would

11  have acquitted him. This Court should reject his claim and deny the petition.

12  **CLAIM FOUR**

13  **PETITIONER'S CLAIM OF CUMULATIVE ERROR IS WITHOUT MERIT**

14

15        In claim four, petitioner contends that a series of trial court errors caused him prejudice.

16  Pet., 39. This claim is without merit because petitioner has failed to show that the state appellate

17  court made an objectively unreasonable application of clearly established United States Supreme

18  Court precedent or that the state appellate court decision was based upon an unreasonable

19  determination of facts.

20        The Court of Appeal rejected this claim of aggregated error because there were no errors

21  and no showing that petitioner suffered prejudice. Exh. F, 17-18. As explained above in regard to

22  petitioner's previous claims, petitioner has failed to show that there were errors and to show that he

23  suffered prejudice. The state appellate court correctly applied federal constitutional standards in

24  denying petitioner's claim that he suffered prejudice from cumulative errors. That is, petitioner has

25  failed to demonstrate that the state appellate court decision was contrary to clearly established

26  federal law or that the state appellate court decision was based upon an unreasonable determination

27  of facts.

28        But even if there were error, the cumulative effect would not have had a substantial and

1  injurious effect on the jury's determination.  The evidence overwhelmingly showed that petitioner

2  caused an insurance claim to be prepared and submitted claiming that he was insured at the time of

3  the accident when he did not purchase the insurance until after the accident.  Under the *Brecht*

4  standard, any cumulative error was harmless because it did not have a substantial influence in

5  determining petitioner's guilt.  The jury's decision would have been the same.

6  **CONCLUSION**

7  Accordingly, for the reasons stated, respondent respectfully requests that the petition be

8  denied with prejudice.

9  Dated:  December 12, 2007

10  Respectfully submitted,

11  EDMUND G. BROWN JR.
   Attorney General of the State of California

12  DANE R. GILLETTE
   Chief Assistant Attorney General

13  GERALD A. ENGLER
14  Senior Assistant Attorney General

15  PEGGY S. RUFFRA
   Supervising Deputy Attorney General

16  /s/ Allen R. Crown
   ALLEN R. CROWN
17  Deputy Attorney General

18  Attorneys for Respondent

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF CONTENTS

2                                                                    **Page**

3  INTRODUCTION                                                           1

4  STATEMENT OF THE CASE                                                  2

5  STATEMENT OF FACTS                                                     3

6  STANDARD OF REVIEW                                                     8

7  **CLAIM ONE       PETITIONER'S CLAIM THAT THE TRIAL COURT
              DENIED HIS RIGHT TO PRESENT A DEFENSE BY**
8  **EXCLUDING   EVIDENCE   OF   INSURANCE
              INDUSTRY PRACTICES IS WITHOUT MERIT**                       9
9
   **CLAIM TWO       PETITIONER'S CLAIM THAT THE TRIAL COURT
              VIOLATED HIS RIGHTS BY FAILING TO PROVIDE**
10 **ACCURATE INSTRUCTION ON THE ELEMENTS OF
              THE CRIME IS WITHOUT MERIT**                               11
11
12 **CLAIM THREE  PETITIONER'S CLAIM OF DENIAL OF EFFECTIVE
              ASSISTANCE OF COUNSEL IS WITHOUT MERIT**                   12
13
   **CLAIM FOUR    PETITIONER'S CLAIM OF CUMULATIVE ERROR IS
              WITHOUT MERIT**
14
                                                                        13
15
   CONCLUSION                                                           14
16

17

18

19

20

21

22

23

24

25

26

27

28

1

# TABLE OF AUTHORITIES

2

Page

3

**Cases**

4

*Bains v. Cambra*
204 F.3d 964 (9th Cir. 2000)                                                                                          9

5

*Brecht v. Abrahamson*
6   507 U.S. 619 (1993)                                                                                   9, 12, 14

7   *Brewer v. Hall*
378 F.3d 952 (9th Cir. 2004)                                                                                           8

8

*Chambers v. Mississippi*
9   410 U.S. 284 (1973)                                                                                                  9

10  *Coleman v. Thompson*
501 U.S. 722 (1991)                                                                                                     10

11

*Crane v. Kentucky*
12  476 U.S. 683 (1986)                                                                                                   9

13  *Davis v. Woodford*
384 F.3d 628 (9th Cir. 2004)                                                                                          10

14

*Early v. Packer*
15  __U.S.__, 123 S. Ct. 362 (2002)                                                                                      8

16  *Early v. Packer*
537 U.S. 3 (2002)                                                                                                        8

17

*Holmes v. South Carolina*
18  126 S.Ct. 1727 (2006)                                                                                                 9

19  *Lockyer v. Andrade*
__U.S.__, 123 S. Ct. 1166 (2003)                                                                                        8

20

*Lockyer v. Andrade*
21  538 U.S. 63 (2003)                                                                                                    8

22  *Menendez v. Terhune*
422 F.3d 1012 (9th Cir. 2005)                                                                                          11

23

*Miller-El v. Cockrell*
24  357 U.S. 322 (2003)                                                                                                   9

25  *Mitchell v. Esparza*
540 U.S. 12 (2003)                                                                                                       8

26

*Penry v. Johnson*
27  532 U.S. 782 (2001)                                                                                                   9

28

**TABLE OF AUTHORITIES  (continued)**

Page

*Shackleford v. Hubbard*
234 F.3d 1072, 1079, n. 2 (9th Cir. 2000)                                     9

*Strickland v. Washington*
466 U.S. 668 (1984)                                                         12

*Sullivan v. Louisiana*
508 U.S. 275 (1993)                                                         11

*United States v. Gaudin*
515 U.S. 506 (1995)                                                         11

*Washington v. Texas*
388 U.S. 14 (1967)                                                           9

*Williams v. Taylor*
529 U.S. 362 (2000)                                                          8

*Woodford v. Visciotti*
__U.S.__, 123 S. Ct. 357 (2002)                                              8

*Woodford v. Visciotti*
537 U.S. 19, 24 (2002)                                                       8

*Yarborough v. Gentry*
540 U.S. 1 (2003)                                                           13

*Ylst v. Nunnemaker*
501 U.S. 797 (1991)                                                          9


**Constitutional Provisions**

United States Constitution
        Fifth Amendment                                                      1
        Fourteenth Amendment                                                 1
        Sixth Amendment                                                      1


**Statutes**

California Penal Code
        § 550(a)(1)                                                          2
        § 550(a)(5)                                                          2
        § 550(b)(3)                                                          2
        § 654                                                                2
        § 667.5(b)                                                           2
        § 12022.1                                                            2

**TABLE OF AUTHORITIES  (continued)**

**Page**

United States Code, Title 28
  § 2254              9
  § 2254(d)          8, 13
  § 2254(e)(1)        9, 11

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28